1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BROCK BANKS,

                          Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                          Defendant.

No. CASE NO.  C10-5068RJB

REPORT AND RECOMMENDATION

 Noted for October 15, 2010

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of  H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been fully briefed.

Plaintiff, Brock Banks, alleges he is unable to work due to "seizures, mini strokes, speech slurs, arms not in control."  Tr. 133.  The administration, relying on medical opinions, did not accept plaintiff's allegations of disabling seizures.  After reviewing the record, the undersigned recommends that the Court affirm the administrative decision.

REPORT AND RECOMMENDATION - 1

1

## FACTUAL AND PROCEDURAL HISTORY

2

Plaintiff was born in 1965.  Tr. 20.  He is a high school graduate and received an AA

3

degree in automobile mechanics.  Tr. 286.  Plaintiff stated that he attended special education

4

classes in elementary school and junior high school.  His past relevant work was work as a ship

5

fitter and rigger, construction worker and an automobile mechanic.  Tr. 134.  Plaintiff also has

6

done auto repair work for friends.  Tr. 28.

7

Plaintiff claims he has not been able to work since June 1, 2004.  Tr. 111.  He states he

8

9

suffered a blow to his head, and afterward he began experiencing spells that ranged from a few

10

times a day to 25 times per day and lasted from five minutes to thirty minutes.  Tr. 133, 148-49,

11

150-57, 178, 184-85.  During these spells his speech allegedly becomes slurred, he drools,

12

sweats, is unable to use his arms and hands, and sometimes falls to the ground.  Tr. 286.

13

On April 3, 2006, plaintiff filed applications for disability and supplemental income

14

insurance benefits, alleging disability as of June 1, 2004.  Tr. 103-14.  His application was

15

denied initially and on reconsideration by the administration.  Tr. 45-56.  Subsequently, the

16

matter was assigned to an administrative law judge ("ALJ"), who conducted a hearing on

17

September 11, 2008.  Tr. 24-42.  After reviewing the documentary evidence and considering

18

plaintiff's testimony, the ALJ issued a decision on October 8, 2008, determining plaintiff to be

19

not disabled.  Tr. 9-23.  Specifically, the ALJ found plaintiff suffered from sleep apnea,

20

personality disorder, anxiety disorder, and substance abuse; however, the ALJ concluded these

21

22

impairments did not prevent plaintiff from working.  The ALJ stated:

23

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform medium work as defined in 20 CFR
> 404.1567(c) and 416.967(c). The claimant can occasionally lift and/or carry fifty
> pounds. The claimant can frequently lift and/or carry twenty five pounds. The
> claimant can stand and/or walk (with normal breaks) for a total of about six hours
> out of an eight hour workday. The claimant can push and/or pull unlimitedly. The

24

25

26

REPORT AND RECOMMENDATION - 2

claimant can never climb ladders, ropes or scaffolds. The claimant can frequently climb ramps, stairs and balance. He can perform simple or detailed instructions at low stress, routine work activities, such as unskilled labor or familiar skilled labor in a predictable routine. He can work with others but should have limited public contact. The claimant must avoid moderate exposure to hazards (machinery, heights, etc.) Exhibits 10F/l- 5.

Tr. 14. Plaintiff requested further administrative review, but the Appeals Council denied the request, making the ALJ's decision the final administrative decision. Tr. 1-5.

On February 2, 2010, plaintiff filed the underlying Complaint seeking judicial review of the ALJ's decision. Plaintiff challenges the ALJ's decision to deny his applications for social security benefits, raising the following two primary claims:

(i) The ALJ's decision is legally erroneous and not supported by substantial evidence because the ALJ failed to comply with Social Security Rulings 96-8p and 96-5p when he evaluated the medical evidence and determined plaintiff's residual functional capacity to perform work; and

(ii) The ALJ erred by relying solely on the Medical-Vocational Guidelines and not utilizing a vocational expert to determine whether or not plaintiff was capable of performing other work within the national economy.

**DISCUSSION**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving any other ambiguities that might exist.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act").  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment that has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th  Cir. 1999).

### I.        The ALJ Properly Considered The Medical Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld."  Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and

whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Here, plaintiff correctly notes that the ALJ gave significant weight to the opinions of two consultative examiners -- Dr. Cosgrove and Dr. Koenen -- and a state agency reviewer -- Dr.

Comrie -- and he gave heavy weight to the opinion of Dr. Chaytor, a neurologist with

Harborview Medical Center's Regional Epilepsy Center.  Plaintiff's Opening Brief at 10.

Plaintiff argues that the ALJ erred when he relied upon these medical opinions, but failed to

include, or explain why he did not include the limitations opined by them in his residual

functional capacity assessment.  Id. at 11-13.  Plaintiff further argues the ALJ should have fully

adopted Dr. Comrie's opinion to find plaintiff's seizures are a severe impairment at step-two of

the five-step administrative process.  Id. at 14-15.

After reviewing the ALJ's decision and his consideration of the medical evidence, the

undersigned finds the ALJ reasonably interpreted the conflicting medical evidence.  The ALJ's

decision is properly supported by substantial evidence and free of any legal errors.  The medical

opinions noted above and relied upon by the ALJ are discussed below.

### A.  Dr. Cosgrove

In July 2005, plaintiff was examined by Dr. Cosgrove.  Tr. 201-08.  Dr. Cosgrove is an

examining, but not a treating physician.  Plaintiff told Dr. Cosgrove that he had been having his

"seizures" since December 2004.  Tr. 202.  It is clear that Dr. Cosgrove did not believe plaintiff's

mental condition was significant.  She noted plaintiff's odd and inconsistent behavior throughout

her report, and concluded that plaintiff had no limitations that would preclude his return to work.

Tr. 207.  Dr. Cosgrove stated:

> As the claimant is going to return to the workplace tomorrow and based upon this
> examination today I see no limits for him returning to work.  I do have suspicions
> that his "seizure" symptoms will recrudesce whenever he fears being disliked, not
> supported emotional[ly] in the work environment, or feels anxious about learning
> a new skill.

> Again I strongly recommend that this claimant be referred to a psychiatrist for
> continued evaluation and medication management as likely resolution could be
> seen within one year.

1    Tr. 207-08.

2            The ALJ gave significant weight to Dr. Cosgrove's opinion that plaintiff was able to

3    work and that his seizures were not a significant impediment to working.  Plaintiff's

4    interpretation of Dr. Cosgrove's opinion conflicts with the ALJ's equally reasonable

5    interpretation.  The ALJ was not required to address or adopt the supposed limitation that

6    plaintiff would experience seizures under certain circumstances in the workplace.  It is not for

7    this court to reject the ALJ's evaluation, even though it differs from plaintiff's, since it is

8    consistent with other independent evidence in the record, discussed below.

9

10           **B.  Dr. Koenen**

11           In June 2006, plaintiff underwent another consultative examination, this time with Dr.

12   Koenen.  Tr. 214-19.  Based on plaintiff's incredible symptoms regarding his alleged seizures,

13   Dr. Koenen believed that he possibly had a factitious disorder, conversion disorder, or was

14   malingering.  Tr. 218.  Dr. Koenen noted that plaintiff could adequately function at home and

15   operated his own automobile repair business, which contradicted his alleged inability to hold

16   jobs for long periods.  Tr. 218.  Dr. Koenen noted that it was "unclear" why plaintiff had

17   problems maintaining regular work attendance.  Tr. 219.  Further, plaintiff's alleged inability to

18   deal with workplace stress would improve through exposure to the workplace and through

19   psychotherapy.  Tr. 219.

20           Plaintiff argues the ALJ failed to acknowledge and adopt Dr. Koenen's opinion that

21   plaintiff would have trouble maintaining regular attendance at a job.  Dr. Koenen stated, "[t]he

22   claimant's [sic] clearly has problems maintaining regular attendance in the workplace and

23   completing a normal workday.  The exact reasons why he leaves work are unclear.  It would be

24

25

26

useful to gather information from former employers to determine out exactly why the claimant

has been dismissed from his jobs." Tr. 219.

The ALJ properly relied on Dr. Koenen's opinion. The ALJ stated:

> I give significant weight to this opinion because it is fairly consistent with Dr.
> Cosgrove's and it is supported by the medical evidence in the record. Both
> opinions concur that the claimant can perform some type of work, and both
> strongly imply that motivational issues may be significant. Also, I heavily
> weighed the GAF score of 55, which is consistent with the claimant's ability to
> complete his activities of daily living with few limits.

Tr. 18.

The court is not persuaded by plaintiff's argument that the ALJ did not adopt or

adequately address the issue of plaintiff's ability to maintain regular attendance at work. Dr.

Koenen clearly stated he did not understand the reasons why plaintiff leaves work, and the ALJ

properly did not include such an unexplained limitation in plaintiff's residual functional capacity.

It is also clear that Dr. Koenen supports the ALJ's finding that plaintiff is capable of performing

simple and repetitive tasks, as well as detailed and complex tasks. Tr. 219

### C.  Dr. Chaytor

In December 2007, plaintiff underwent a neuropsychological evaluation with Dr.

Chaytor. Tr. 286-90. Dr. Chaytor found that plaintiff had low average intellectual ability and

personality testing showed psychological impairment and thought disorder. Tr. 288-89. Dr.

Chaytor found no convincing evidence of any decline in cognitive functioning over time. Tr.

289. Plaintiff's thought processes were coherent and logical, and his insight and judgment were

intact. Tr. 287. Dr. Chaytor believed that plaintiff's test results likely underestimated plaintiff's

current cognitive functioning level, due to his inconsistent behavior. Dr. Chaytor concluded that

plaintiff had psychiatric symptoms and "ongoing spells" that may limit his ability to work, but he

had no significant cognitive deficits that would preclude employment in an appropriate

occupation.  Tr. 289.

The ALJ accommodated plaintiff's mental limitations in the residual functional capacity

assessment, properly incorporating the medical opinions he relied upon.  Specifically, the ALJ

found that plaintiff could only perform simple or detailed instructions, but only in a low stress

environment with routine work activities such as unskilled labor or familiar skilled labor in a

predictable routine.  Tr. 14.  Accordingly, the ALJ gave significant weight to Dr. Chaytor's

opinion that plaintiff had no significant impediments to returning to work.

Plaintiff argues Dr. Chaytor found plaintiff would have difficulty with "finger oscillation

speed, motor dexterity, and grip strength."  Plaintiff's Opening Brief (Doc. 15) at 13.  The court

is not persuaded by this assertion.  Dr. Chaytor found that plaintiff demonstrated "implausibly

poor" grip strength deficiencies in both hands, obtaining scores more than five standard

deviations below average, but Dr. Chaytor clearly did not accept these results.  Tr. 288-89.

Thus, plaintiff's alleged hand limitations were properly excluded by the ALJ.

### D.  Dr. Comrie

On June 21, 2006, Dr. Comrie, a state agency medical consultant, reviewed the evidence

in the record.  Dr. Comrie assessed plaintiff's mental health evaluation.  He did not examine

plaintiff.  Tr. 225-42.  Dr. Comrie diagnosed plaintiff with anxiety disorder and a personality

disorder, with oddities of thought, perception, speech and behavior, and he diagnosed

intermittent alcohol and cannabis abuse.  Id.  Dr. Comrie noted that plaintiff displayed "unusual

mannerisms and statements," along with inconsistent behavior that led some doctors to doubt

whether plaintiff had ever had seizures.  Tr. 227.  Dr. Comrie surmised that plaintiff's "episodes"

and mannerisms were instead psychogenic and perhaps related to anxiety. Tr. 227.

Plaintiff argues that Dr. Comrie found plaintiff to have "psychogenic seizure episodes," which the ALJ then failed to take into account. Plaintiff's Opening Brief (Doc. 15) at 14. Dr. Comrie's opinion and the evidence relied upon by the ALJ does not fully support plaintiff's argument. As shown above the medical opinions relied upon by the ALJ did not find plaintiff suffered from any "seizures." In contrast each of the mental health professionals found plaintiff's impairment was related to anxiety or a personality disorder, and significantly, the opinions did not find related impairments that would prevent plaintiff from working. Thus, the ALJ did not err in failing to account for plaintiff's seizure activity, because there was no credible evidence of any seizure activity. The ALJ properly assessed plaintiff's mental impairment(s) and based his findings on the medical opinion evidence.

In sum, the ALJ properly considered the medical evidence in the record as whole. The ALJ's finding that plaintiff retains the ability to perform certain level of work activity is properly supported by substantial evidence and free of any legal error.

## II.   *The ALJ Properly Applied The Grids At Step-Five*

The Social Security Regulations establish a five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. § 404.1520. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that "the claimant can perform a significant number of other jobs in the national economy." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). To assist in the step-five determination, the Social Security Administration established the Medical-Vocational Guidelines (the grids), which "consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." Heckler v. Campbell, 461 U.S. 458, 461-62 (1983). If the grids match the claimant's

REPORT AND RECOMMENDATION - 10

qualifications, "the guidelines direct a conclusion as to whether work exists that the claimant could perform." Id. at 462. If the grids do not match the claimant's qualifications, the ALJ can either: (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, see Soc. Sec. Ruling 83-14; or (2) rely on a vocational expert if the claimant has significant non-exertional limitations. Desrosiers v. Secretary of Health and Human Servs., 846 F.2d 573, 577 (9th Cir. 1988).

In this case, the ALJ properly utilized the grids because the record supports the ALJ finding that plaintiff had no significant non-exertional limitations such as seizures, hand/finger limitations, or stress. The ALJ specifically addressed, in considerable depth, his reliance on the grids and his finding that plaintiff did not have any significant non-exertional limitations to preclude his reliance on the grids. Tr. 20-23.

Plaintiff's argument that the ALJ misapplied the grids is based on the premise that the ALJ failed to properly consider plaintiff's "seizures" and his mental impairments. As explained above, the ALJ properly relied on medical opinions to find plaintiff did not have "psychogenic seizures," or seizures of any kind. Further, Dr. Cosgrove, Dr. Koenen, and Dr. Comrie all found plaintiff had mental limitations, but not to the degree that would prevent plaintiff from working. Dr. Chaytor similarly found that plaintiff would be able to perform certain types of work and that plaintiff's purported hand deficiencies were implausible. With respect to stress, the ALJ found that plaintiff could only work in low stress environments. Moreover, the ALJ found that plaintiff's allegations regarding the severity of his alleged impairments were not credible, and plaintiff does not challenge this finding.

Accordingly, substantial evidence relied upon by the ALJ shows that plaintiff did not have non-exertional limitations that would significantly diminish his ability to work. When a

claimant does not have significant non-exertional limitations, an ALJ may rely upon the grids to make a step five determination.  <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1076-77 (9th Cir. 2007).  The ALJ properly utilized the grids in this case.

### CONCLUSION

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on October  15, 2010, as noted in the caption.

DATED this 21st day of September, 2010.


J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12